NATIONAL CO. et al. v. BELCHER.[1]

(Circuit Court of Appeals, Third Circuit. January 24, 1896.)

No. 38.

1. PATENTS—ANTICIPATION—DUPLICATION OF PARTS.
 Where a description of a single traveling cable for controlling the operation of an elevator contained a suggestion that the device might be duplicated, but without any statement or description of a means for uniting the two parts into an operative combination, held, that this was not an anticipation of a true combination of two traveling cables, so arranged as to make the action of one counterbalance and harmonize with the other.

2. SAME—EXPERIMENTS OF EXPERTS.
 Evidence by a trained mechanic that by following the suggestions of a prior patent, in respect to the duplication of the device therein described, he produced without difficulty a device substantially identical with that of the patent sued on, is not to be lightly accepted, since, being acquainted with the present art, he would naturally follow the suggestions thereof, or perhaps introduce suggestions of his own mind. 68 Fed. 665, reversed.

3. SAME.
 A patent obtained by the original and first inventor of a device is not invalidated by the fact that he induced another person, who was about to apply for a patent, to delay making his application, because he feared it might cause litigation and delay in the patent office.

4. SAME—PRIORITY OF INVENTION—ADMISSIONS.
 On a question of priority as between two inventors, the fact that one of them participated in the application of the other, and took an interest under it, would seem to constitute a conclusive acknowledgement of priority.

5. SAME—ELEVATORS.
 The Reynolds patent, No. 317,202, for a device for controlling the operation of elevators, held valid, entitled to a reasonably liberal construction, and infringed. 68 Fed. 665, reversed.

6. SAME.
 The Reynolds patents, Nos. 456,122 and 458,917, for devices for controlling the operation of elevators, held void because of anticipation and want of invention. 68 Fed. 665, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

1 Rehearing denied March 13, 1896.

This was a suit in equity by the National Company and Otis Bros. & Co. against Thomas H. Belcher for alleged infringement of certain patents relating to devices for controlling the operation of elevators. Complainants appealed from a part of the decree below (see 68 Fed. 665) which declared certain of the patents sued on to be void.

James H. Raymond, for appellants.

Ernest Howard Hunter, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

BUTLER, District Judge. The suit was brought to recover compensation for the infringement of seven patents; three of them being Nos. 317,202, 456,122, and 458,917, granted to George H. Reynolds, another No. 183,055, granted to Philip Hinkle, and another No. 228,107, granted to Charles R. Otis, all for improvements in elevators and the means of operating them. The claim based on two other patents included was withdrawn.

The circuit court sustained the suit as respects the patent to Otis, and dismissed it as respects the others named. An appeal was taken to so much of the decree as relates to the three Reynolds patents.

Are these patents valid; and has the respondent infringed them?

As respects No. 317,202, the first in order of time, the alleged invention is described as follows:

"My invention is applicable to the devices or hand gear whereby the operation of the change or reversing valve in elevators is controlled by the attendant in the car or cab, and is applicable to hydraulic or steam elevators in which these devices are connected with and serve to shift the main change or reversing valve directly, and also to those hydraulic elevators in which the said devices are connected with an auxiliary or pilot valve, and by shifting the latter control the admission of water or other fluid to and its exhaust from a controlling cylinder or cylinders containing a piston or pistons, on which the water or liquid acts to move the main valve.

"My invention relates to elevators in which the movement of the valve is accomplished by shifting a lever or hand gear, which is arranged on the car and which occupies a stationary position relatively to the car as the latter rises and falls.

"The invention consists in novel combinations of parts hereinafter described, and pointed out in the claims."

The claims read as follows:

"1. The combination, with the car or cab and its controlling valve, of a lever or hand gear on the car or cab, and occupying a stationary position relatively thereto as it travels, sheaves, g, g', and bearings therefor arranged at the bottom of the shaft and adapted to move upward and downward, other sheaves, h, h, at the top of the shaft, flexible connections passing around these sheaves from the top to the bottom of the shaft and connected at their one end with the said lever or hand gear on the car or cab, and connections between the valve and the movable bearings for the sheaves, g, g', at the bottom of the shaft, through which the movement of the lever or hand gear on the car and the rising movement of one or other of the sheaves, g, g', will effect the shifting of the valve, substantially as herein described.

"2. The combination, with the car or cab, and its controlling valve, of a beam fulcrumed at the bottom of the elevator shaft, connected with said valve and provided with sheaves, g, g', sheaves, h, at the top of the elevator shaft, a lever or hand gear occupying a stationary position on the car or cab as it travels, and flexible connections attached at their one end to said lever or hand gear and thence passed downward under the sheaves, g, g', then upward over the sheaves, h, and weighted at their other end, substantially as herein described."

In considering the question of validity it is unnecessary to enter upon a description of elevators, the means employed to operate them or a historical review of the art to which they belong. Prior to the Reynolds patent No. 317,202, the operating devices employed consisted in some instances of a single stationary cable with its attachments, in others of two separate stationary cables with their attachments, and in others of a single traveling cable with the necessary attachments. None of these devices secured complete control of the car; and the object of Reynolds was to accomplish this important object. He sought to do it through the introduction of an additional traveling cable combined and worked in harmonious conjunction with the old one, by the means and in the manner he describes. That he was the first to introduce a double cable device, so combined and arranged as to make the action of the one counterbalance and harmonize with that of the other, is, we think, clear. It is not seriously contended that such a device was ever used until he applied it. Two stationary independent cables, as before stated, and a single traveling cable, had been used, but neither device bore any material resemblance to Reynolds' either in arrangement or operative effect. There is no justification for the assertion that Baldwin's device, with a duplication of his cable, would anticipate Reynolds'. The duplication without the addition of Reynolds' lever and other elements of his device, would be useless. The value of Reynolds' invention arises from the unification of the cables and their harmonious and counterbalancing action, secured by the connecting devices he employs. Baldwin himself ackowledged the novelty and superiority of Reynolds' device, in the interference proceedings referred to in the record; and while we do not attach much importance to this acknowledgment, we are satisfied that it was correct. It is urged, however, that a German patent granted to one Lampe describes Reynolds' invention. This patent shows a device with a single traveling cable; and suggests that it may be duplicated. A duplication would result, however, in two independent devices simply, just as would a duplication of Baldwin's device. He does not suggest a combination or any means of making one. In so far as appears the suggestion to duplicate was of no value; no one ever acted upon it; indeed, it does not appear that Lampe's device itself was ever used. It is earnestly contended, however, that any competent mechanic in carrying out the suggestion would combine the two cables as Reynolds has done, and thus produce a device indentical with his. To sustain this contention the respondent relies on the testimony of his witness Noble, who says that by following Lampe's directions he made a device which is identical with Reyn-

olds'. The device is before us, and it is substantially identical with that of Reynolds. Of course if the witness is accurate the respondent's contention is sustained. This evidence is somewhat startling; and should not be accepted lightly. If a valuable patent might be overthrown in this manner by the testimony of an expert, without careful inquiry into and virtual demonstration of its correctness, the rights of patentees would rest upon the testimony of such witnesses rather than the judgment of the court. Of course, as before remarked, if Noble is entirely accurate there is no escape from his conclusion. We cannot, however, accept his statements, notwithstanding their positiveness. We do not mean to cast doubt on his honesty; but it seems manifest from the face of Lampe's patent that it does not describe such a device as that produced; that the witness has not adhered to its terms, either in letter or spirit, but has introduced the suggestions of his own mind. He is a trained mechanic and an intelligent expert, familiar with the art involved. It is difficult, at least, to believe that he was not aware of Reynolds' device, notwithstanding what he says on the subject. It cannot well be supposed that he was not abreast with the progress of this art; and being so it was quite natural that in duplicating Lampe's device he should unite the parts so as to make them co-operate and work as he knew they could be made to do. It is clear that if he did not follow Reynolds with knowledge of what Reynolds had done, he invented the parts which he has added to Lampe's device. Reynolds' lever, an essential element to his device, as well as other parts of his combination, shown in Noble's model, are not suggested in Lampe's patent; nor is any union, or means of uniting the duplications suggested. Of course it may justly be said that Lampe intended them to be united; but he suggests no way of doing it. In the light of our present knowledge on the subject it is easy to see how it should be done; and it was this knowledge, we believe, that guided Noble, and induced him to follow Reynolds. If he had made his model before the date of Reynolds' patent it is improbable that the parts would be united as they are, and made to co-operate as they do. Skilled mechanics and inventors were then industriously working on the problem: how can the control of elevators be rendered more perfect? It was very imperfect, and the use of elevators was consequently unsafe; accidents were common and sometimes very serious. The most important step in solving the problem was that taken by Reynolds when he introduced the second cable and so connected it with the first that the two should combine, co-operate with, and counterbalance each other, in action, as he describes. Lampe's patent had been before the public for years, and yet no one of the numerous inventors engaged on the problem saw in it what Mr. Noble thinks he found.

What has been said applies as well to the subject of patentable novelty, as to priority.

It is urged, however, that the patent is invalidated by Reynolds' alleged arrangement with Smith; that he induced Smith to delay

application for patent No. 334,907 until he, Reynolds, had obtained' his. A careful examination of the evidence has satisfied us that Smith's invention did not anticipate Reynolds' device, described in No. 334,907. He and Reynolds had conferences on the subject of their work, as both testify; that much is certain. Precisely what was said or done is uncertain. That Smith had sketched something seems clear, but what it was no one can tell; the sketches were evidently considered unimportant, for they were not even preserved. He has some ideas on this subject, but he certainly had not at the time perfected such an invention as is claimed. Reynolds' conduct was not an admission that he had. It may be that the latter feared litigation and delay in the patent office, because of something Smith said, and for this reason wanted Smith to delay his application. If he induced such delay it did not invalidate his patent. He was the original inventor and was lawfully entitled to the patent. His conduct was not fraudulent either as respects Smith or the public.

Patent No. 456,122 is for a subordinate improvement in the device covered by No. 317,202. Its novelty consists, substantially, in attaching the nonoperating ends of the cables to the sides of the car, instead of the movable weights described in the former patent. This is anticipated by Smith's patent No. 334,907. The complainant seeks to avoid this patent on the ground that Reynolds was the prior inventor of what it covers. The evidence does not, however, sustain the position. Smith's patent is prior in date, and we do not find anything sufficient to overcome the case thus established. Indeed Reynolds' participation in the application for this patent, and taking an interest under it, would seem to constitute a conclusive acknowledgment of Smith's priority. He thus confessed that Smith was and represented to be, the original inventor, with full knowledge of all the circumstances. Whether his conduct in this respect constituted an estoppel need not be considered.

Whether Reynolds' first patent might have been construed to cover the novelty embraced by the second, (as the respondent's expert testifies it should be,) we need not consider. The patentee as well as his assignee, did not so construe it; but took No. 456,122 to secure what the latter covers; and have relied upon this patent for that purpose, in this litigation. Furthermore Reynolds at least is not in a position to deny the validity of Smith's patent. His participation in obtaining it, above referred to, stands in his way. Whether his assignee is affected by this conduct need not be considered.

Patent No. 458,917 cannot be sustained. We agree with the circuit court that it covers nothing new. Belt tighteners, or tension devices, of similar character, were old, and there is nothing in Reynolds' application of this old device that shows invention.

Infringement is charged of the first claim of No. 317,202. We have seen what this claim is; and we find it to be infringed by the respondent's device. The language of the claim should be construed with reasonable liberality. The respondent's expert Mr. Hunter, as

we have seen, construed it so broadly as to include all embraced in patent 456,122, and consequently held it to anticipate that patent. We think it should justly be construed to cover the respondent's device, except as respects the attachment of the nonoperating ends of the cable to the car. As we have seen, Reynolds and his assignee so construed it as to exclude this arrangement; and they should be held to that construction. With this exception we regard the difference between the respondent's device and that of the complainant, as immaterial; they are seeming rather than actual; whether so made to evade Reynolds' patent need not be considered.

The decree must therefore be modified to the extent indicated and the record remanded to the circuit court for further proceedings.