**CHANDLER et al. v. CUTLER–HAMMER, Inc.**

**No. 5325.**

District Court, E. D. Wisconsin.

April 29, 1942.

See, also, 31 F.Supp. 453.

Williams, Bradbury & Hinkle, Warren C. Horton and W. M. Kolehmainen, all of Chicago, Ill., for plaintiff.

Lecher, Michael, Whyte & Spohn, and Gerrit Foster, all of Milwaukee, Wis., and Thiess, Olson & Mecklenburger, J. Bernhard Thiess, George W. Hansen, and Sidney Neuman, all of Chicago, Ill., for defendant.

DUFFY, District Judge.

The plaintiff Chandler is the owner of the legal title to, and the plaintiff Panish is the exclusive licensee under, Chandler Reissue Patent No. 19,445. The complaint alleges infringement of that patent. The defendant filed its answer, and also a counterclaim for a declaratory judgment asking that Panish Patent No. 1,747,594, owned by the plaintiff Panish, be declared void. Defendant alleges that the plaintiffs had notified the trade, including the defendant, of the alleged infringement of not only the Chandler reissue patent which was the basis of the complaint herein, but also of the Panish patent. The plaintiffs filed a reply in the nature of a counterclaim, alleging that the Panish patent is valid and infringed by the defendant. A motion by the defendant for judgment on the pleadings on its counterclaim, wherein it asked for a declaratory judgment that the Panish patent is invalid, and a motion for a dismissal of the Panish counterclaim with prejudice, were denied heretofore for the reasons stated in Chandler et al. v. Cutler-Hammer, Inc., D.C., 31 F.Supp. 451.

A trial upon the merits has been had. It appears that a Patent Office interference was declared in 1930 between the then issued Panish patent and Chandler's application for a reissue patent. Pursuant to agreement and stipulation, the conflicting claims were submitted to arbitrators, and a decision was rendered that Chandler was the prior inventor. The Patent Office then entered a judgment of priority in favor of Chandler on September 19, 1933, and the Chandler Reissue Patent No. 19,-445 was issued on February 5, 1935. This patent contains 25 claims that are identical with claims in the Panish patent. Claims Nos. 1 to 18, inclusive, 20, 21, and 30 to 34, inclusive, of the Panish patent are included in the claims of the Chandler reissue patent.

On April 10, 1933, Panish acquired an exclusive license under the Chandler reissue patent. Panish has never filed a disclaimer as to the 25 claims in his patent which were included in the Chandler reissue patent.

Since October 16, 1935, the Philadelphia Gear Works, Inc., has been the exclusive licensee under the letters patent in suit. Defendant contends that the conduct of the plaintiffs and of the Philadelphia Gear Works, Inc., in notifying the cities of St. Paul and Minneapolis of claimed infringement of both the Chandler and Panish patents, as well as two additional patents, was such as should bar plaintiffs from relief in this action. This contention has been carefully considered, and it suffices to say that such action was taken in good faith, and will not bar the plaintiffs herein.

From the pleadings, it appeared as though one question to be litigated was whether the structure of the Chandler patent is operative or inoperative. It was the defendant who, by its counterclaim, first brought the Panish patent into this case. This court held that it was proper, as a pleading in the alternative, following defendant's counterclaim, for the plaintiffs to say that if the structure in the Chandler patent were inoperative, they would then rely upon the Panish patent. During the course of the trial the defendant withdrew its claim that the structure of the Chandler patent was inoperative. Although Panish originally contended before the Patent Office that the Chandler device was inoperative, yet he became convinced to the contrary after he had built the model there to demonstrate his contention. The testimony discloses that the model operated satisfactorily even before the gear reduction was installed at the Philadelphia Gear Works. Therefore, the question of whether the

structure of the Chandler patent is operative or inoperative is no longer an issue in this case.

 It is well recognized that there cannot be two patents for the identical invention. Therefore, the Panish patent, in so far as its claims are identical with those in the Chandler patent, needs no further consideration here. Furthermore, when Panish took an exclusive license under the Chandler reissue patent, he conclusively acknowledged Chandler's priority. National Co. et al. v. Belcher, 3 Cir., 71 F. 876. The judgment to be entered herein may provide that Chandler is the first inventor of the 25 claims common to both the Chandler Reissue Patent No. 19,445 and the Panish Patent No. 1,747,594, and that the counterclaim filed by plaintiffs, charging the defendant with infringement of the Panish patent, as to any of said 25 claims, be dismissed.

The patent in suit pertains to remote control mechanisms for the operation of valve controls. Plaintiffs contend that Claims 22, 23, 24, 27, 28, 29, 31, 32, 33, 41, and 42 of the Chandler reissue patent are infringed by defendant's B.B. and T.N. valve operators, or either of them; that Claims 11, 21, and 39 are infringed by their B.B. operator; and that Claims 44 and 45 are infringed by their T.N. operator.

One of the fundamental differences in the contentions herein is that the plaintiffs emphasize the mechanical features involved in the valve operators, while the defendant insists that the suit involves motor driven valve controls which embody electrical circuits as essential features thereof.

The operation of valves in water lines, steam lines, fuel lines, and other conduits is a very important function. Some of these valves are large in size and are heavy mechanisms. Formerly all such valves were opened and closed by hand. Many times this was very laborious, necessarily utilizing the services of two men for each valve. In cases of emergency, such as the bursting of a steam line, workmen might not be able to get to the vicinity of a valve. Oftentimes the location of a valve would be quite inaccessible.

Motor operators for valves was a natural development. It was desirable that valves be operated from some central station or some point remote from the location of the valve. Then followed the problem of a control which would start and stop the valve at certain limits of movement.

One of the early developments was the position limit switch control. This mechanism would be actuated after the valve disc or spindle had traveled a certain predetermined distance. But even after the electric current was turned off, motors customarily continued to turn, due to inertia or drift. If a valve were fully seated and the motor continued to turn, there was great danger of damage to the valve or its driving mechanism. Various efforts were made to control the kinetic energy developed by the motor drift.

Chandler Reissue Patent No. 19,445 has a filing date of June 21, 1923. Prior to that date, valve controls which were well known in the art included position limit switch controls; position limit switch controls with compression springs, with slip clutches, and with overload relays; and controls having overload relay switching mechanism. In an overload relay or circuit breaker, if the position limit switch were not tripped when the valve disc was full seated, the resulting inability of the valve and spindle to move would cause the motor to stall. This caused the electric current to build up in the motor circuit and would shut off the power supply to the motor.

Chandler disclosed to the world a valve operator having a mechanical torque limit switch in both opening and closing directions. Chandler described a specific switch actuating mechanism for the purpose of automatically controlling both the opening and closing movements of the valve. In the power train he utilized a crown-toothed slip clutch and associated parts to provide for slip under high torque conditions and to actuate the circuit controlling switches for discontinuing the supply of power to the motor. Panish testified that the clutch arrangement embodied in the Chandler device "is of course the secret or heart of the whole thing * * *." It should be noted that the slip clutch and associated actuating mechanism operates in exactly the same manner in both directions.

In the Chandler patent (p. 1, col. 1, lines 8–18), it is stated: "In the preferred embodiment, a slip clutch is provided which is rendered substantially non-slipping when the valve is being started from its open or closed position or during the travel of the valve but which is designed to slip when the valve nears the limit of its movement

in either direction. The slipping of the clutch as the valve nears the limit of its movement automatically turns off the power to the motor to stop further driving of the clutch mechanism and prevent jamming or breaking of the valve or control unit."

While Chandler speaks of the "preferred embodiment", it is in reality his only embodiment. While Chandler shows two forms of his invention, he employs the same slip clutch in each of them. Chandler gave no indication that satisfactory results could be obtained without the use of the slip clutch, or that his torque limit control could be used in one direction only. He taught an impositive drive with a torque responsive control in both directions. His teaching showed only a torque responsive limit switch actuating mechanism in both directions. He was his own lexicographer. He could have used the words "in each direction", instead of "in both directions"; but apparently that idea was not in his mind. The identity of the operation in both directions is emphasized by the reversibility features employed.

Claims 22, 23, 24, 27, 28, 29, 31, 32, 33, 42, 44, and 45 may be considered together. It is agreed that Claim 22 is typical. It reads: "In a valve opening and closing device having valve actuating mechanism and a driving motor therefor; means for automatically controlling the closing and opening movements of the valve by said motor and valve actuating mechanism and for automatically determining the extents of movements of the valve *in both opening and closing directions*, said means including means actuated by the movement of the motor after the valve is closed for rendering the motor temporarily inoperative to apply power to the valve actuating mechanism."

Each of the claims above designated contains this common clause: " * * * means for automatically controlling the closing and opening movements of the valve by said motor and valve actuating mechanism and for automatically determining the extents of movements of the valve in both opening and closing directions, * * *"

▮▮ All of the claims in suit, except 11 and 21, originated in the Panish patent where, in order to make these claims allowable over Harvey Patent No. 1,479,178, the common clause was inserted in response to the last Office Action. This was done to emphasize a two-way torque responsive

control. The file wrapper history of the prosecution of the Panish patent shows that following the first amendment, the next Office Action (Paper No. 5) cited the Harvey Patent No. 1,479,178, and 20 of the claims contained in the application were rejected on that reference. To meet this rejection, applicant, in the second Amendment B (Paper No. 6), cancelled and rewrote most of the claims and added two new claims. They all contained the common clause, " * * * means for automatically controlling the closing and opening movements of the valve by said motor and valve actuating mechanism and for automatically determining the extents of movements of the valve in both closing and opening directions * * *." Panish argued: "It is this inability of Harvey's structure to operate automatically in both closing and opening directions that keeps the Harvey structure out of the valve control art." A careful examination of this prosecution demonstrates that plaintiffs should be estopped to assert any broad interpretation of these claims to include a one-way torque. This is particularly true since most of the claims, when rewritten in Amendment B, were identical in language to the claims rejected prior to the amendment, except for the common limiting clause. They cannot be given a scope which they might have had without the amendment.

▮▮ There is a decided difference of opinion as to what is meant by the phrase, "automatically determining the extents of movements of the valve." I believe the proper construction implies something more than the operation of a position limit switch which functions without judgment, and only as some definite thing attains some definite position. I hold that the plaintiffs are estopped to assert that the claims containing the common clause can be construed to cover a valve operator which uses torque control in one direction only. The claims must be strictly construed and, being thus construed, are undoubtedly valid, but are not infringed by either the Cutler-Hammer B.B. operator or the T.N. operator. The opening movement of the valve in the B.B. type is controlled by a position limit switch. When the valve reaches the limit of its travel in the opening direction, the position limit switch, upon being actuated, shuts off the power to the motor and the electromagnet controlling the instantaneous release is de-energized, thus preventing drift, or motor inertia, from further driving the valve

against the bonnet bushing. In the closing operation, the movement of the valve is controlled by a position limit switch up to the point where the seating zone is reached; thereupon the control is shifted to a mechanical torque responsive switch; and when the valve reaches the seat, the torque responsive switch mechanism shuts off the motor power supply and thereupon the electromagnet controlling the instantaneous release is de-energized and the power train is declutched so as to prevent jamming and further driving of the valve. In the accused T.N. type valve operator, in the opening direction it is entirely under the control of a position limit switch. The drive throughout the entire opening travel of the value is of a positive character. When the valve has traveled a predetermined distance and has reached a point adjacent to the bonnet bushing, the position limit switch mechanism is actuated and thereby shuts off the power supply to the motor. In the closing direction, the movement of the valve is under the control of the thrust limit switch mechanism; and when the valve reaches the seat, the thrust limit switch mechanism is actuated to shut off the supply of power to the motor and, by virtue of the large thrust rings employed by the defendant, motor inertia is absorbed, preventing jamming of the valve. Defendant does not use a slip clutch nor does it use a two-way torque responsive control. Hence Claims 22, 23, 24, 27, 28, 29, 31, 32, 33, 42, 44, and 45 are not infringed by either the B.B. or the T.N. valve operators.

Claim 11 is asserted only against the B.B. operator. This was originally Claim 14 of the Chandler application. It was rejected in the first Office Action on the patent to Gil, No. 1,074,428. Applicant's counsel argued: "No provision is found in Gil for rendering the drive of the valve positive when starting the valve from its seat and yielding when the valve reaches the limit of its movement." In the B.B. operator the drive is positive at all times, except for the period when it is rendered impositive in the seating zone. The last amendment to this claim, which refers to "means acting on said driving means", is a limitation to the specific cam mechanism which functions in the Chandler operator to make the drive positive when the valve operating mechanism is started. It follows that Claim 11 does not read upon the B.B. structure.

Claim 21 was the original Claim 25 of the Chandler application, and was renumbered 24 in Amendment A. The limiting clause reads: " * * * means for rendering the clutch responsive to an overload whereby the drive is momentarily rendered ineffective, * * *." In Chandler the clutch teeth are so designed that they will slip over one another when the valve meets an obstruction or is seated, and thus are rendered momentarily ineffective. In the B.B. operator, when the limit switch is operated, it opens the circuit of the instantaneous release coil whereupon the instantaneous release pin is withdrawn from the driving train to—not momentarily but—permanently render it ineffective until it is reset by means of a manual operation of the control. I do not consider that there is an infringement of Claim 21.

Claim 39, which originally was Panish Claim 18, is asserted only against the B.B. operator. Here also the claim was amended to meet the Harvey patent, and applicant added the last clause of the claim, which reads: " * * * and means for returning said thrusted member and switch to normal position when the motor has been made inoperative to apply power to the valve-actuating mechanism." In the trial Panish testified that this meant the same as the clause referring to "means for rendering the motor temporarily inoperative." As the B.B. operator does not have a repeat automatic operation in the same direction without motor reversal, I am of the opinion there is no infringement.

In as much as none of the claims in suit are infringed by either the B.B. or T.N. operator, a discussion of the validity of the claims is not necessary.

A judgment dismissing the complaint may be entered.