### CHANDLER et al. v. CUTLER-HAMMER, Inc.

### No. 8102.

Circuit Court of Appeals, Seventh Circuit.

May 15, 1943.

Lynn A. Williams, Warren C. Horton, and Waino M. Kolehmainen, all of Chicago, Ill., for appellants.

J. Bernhard Thiess, Geo. W. Hansen and Sidney Neuman, all of Chicago, Ill., for appellee.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The plaintiffs charged the defendant with infringement of United States Reissue Patent No. 19,445, to Chandler. This patent is a reissue of a former patent to Chandler issued prior to February 18, 1930. On that date United States Patent No. 1,747,594 was issued to Panish, covering the same subject matter as that disclosed by Chandler's application for his reissue, whereupon Chandler inserted in his reissue application identical copies of twenty-five claims of the Panish patent, and an interference was declared. Thereupon, by stipulation, the factual question of prior invention was submitted to arbitrators and Chandler prevailed. As a result thereof the reissue patent in suit was issued to Chandler on February 5, 1935. Panish has never filed a disclaimer as to any of his claims which were included and allowed in the Chandler reissue patent.

The defendant's answer denied infringement and alleged invalidity. It also filed a counterclaim in which it sought a declaratory judgment declaring the Panish patent void. Plaintiffs replied in the nature of a counter claim, alleging validity of the Panish patent and infringement thereof by the defendant. Thereupon, the defendant moved for judgment on the pleadings with respect to its counterclaim, and for a dismissal of the Panish counterclaim, which motions were denied by the court. 31 F. Supp. 451.

On April 10, 1933, Panish acquired an exclusive license under the Chandler reissue patent, and the right to grant sublicenses within certain fields. Since October 16, 1935, the Philadelphia Gear Works, Inc., has been exclusive licensee, from Pan-

ish, under the reissue patent. It was admitted that the plaintiffs and the Philadelphia Gear Works, Inc., notified the cities of Saint Paul and Minneapolis, before the institution of this action, of their infringement of both the Chandler and the Panish patents. These notifications, it was claimed by the defendant, constituted such conduct as would bar the plaintiffs from relief in this action. The District Court held that such notifications were in good faith on the part of the plaintiffs and their licensee and would not bar the plaintiffs in this action. We think there was no error in this ruling.

Originally one of the questions raised by the issues in this case was whether the Chandler patent was operative. Inasmuch as the defendant by its counterclaim first brought the Panish patent into the case, the court deemed it proper to permit the plaintiffs to file their counterclaim in which they sought relief upon the Panish patent in case the Chandler patent was declared to be inoperative. During the course of the trial the defendant withdrew its claim that the Chandler structure was inoperative and the District Court ruled that Chandler was the first inventor of the twenty-five claims common to both patents, and dismissed plaintiffs' counterclaim with respect to the twenty-five common claims.

The District Court found the facts specially and rendered its conclusions of law thereon, thereby holding the reissue patent valid and that none of the claims relied upon were infringed by any of the accused devices. The real controversy presented is whether the claims relied upon are entitled to such a broad construction as to include the accused devices. The District Court held that under the circumstances the claims relied upon should · be construed quite narrowly and that when so construed they are not infringed by defendant's devices. The defendant, on the other hand, does not contend that the patent is invalid unless the claims are construed so broadly as to read upon the accused devices.

The District Court has supported his rulings by a very carefully prepared opinion, 45 F.Supp. 158, and we deem it unnecessary to repeat here much of what is there set forth. We are convinced from the record that all the claims relied upon, except one, are valid, and we are further convinced that none of the claims relied upon, except one, is entitled to such a broad construction as to include the accused devices.

It is contended by plaintiffs that the defendant's device referred to as his TN type infringes claims 22, 23, 24, 27, 28, 29, 31, 32, 41, 42, 44, and 45, and that the defendant's device referred to as BB type infringes claims 11, 21, 22, 23, 24, 27, 28, 29, 31, 32, 33, 39, 41, and 42. Of all these claims those numbered 11 and 21 are the only ones which originated with Chandler. The others originated with Panish.

The disclosure of the reissue patent pertains to remote control mechanisms for the operation of valve controls in water, steam and fuel lines, especially those of a very large and heavy character. The development of such devices and the necessity therefor are well set forth in the District Court's opinion, and they will not be here repeated.

It is sufficient to say that the filing date of Chandler's reissue was June 21, 1923, and at that time valve controls were well known in the art. They included position limit switch controls with and without compression springs, with slip clutches, with overload relays, and controls having overload relay switching mechanisms.

Chandler disclosed a valve operator having a mechanical torque limit switch which operated in both directions, and described a switch-actuating mechanism which automatically controlled both the opening and closing movements of the valve. In the power train he utilized a crown-toothed slip clutch and associated parts to provide for a slip under high torque conditions for the purpose of actuating the circuit switches for discontinuing the supply of power to the motor.

In the defendant's device BB, the opening movement is controlled by a position limit switch. When the valve reaches the limit of its travel in the opening direction, the position limit switch, upon being actuated, shuts off the power to the motor, and the electromagnet controlling the instantaneous release is deenergized, thus preventing drift, or motor inertia, from further driving the valve against the bonnet bushing. In the closing operation the movement of the valve is controlled by a position limit switch up to the point where the seating zone is reached; thereupon the control is shifted to a mechanical torque responsive switch, and when the valve reaches its seat, the torque-responsive switch mechanism shuts off the motor power supply and thereupon the electromagnet controlling the

instantaneous release is deenergized and the power train is declutched so as to prevent jamming and further driving of the valve.

The defendant's TN type valve operator is entirely under the control of the position limit switch, when traveling in the opening direction. The drive throughout the entire opening travel of the valve is of a positive character, and when the valve has traveled a predetermined distance and has reached a point adjacent to the bonnet bushing, the position limit switch mechanism is actuated and thereby shuts off the power supply to the motor. When the valve is traveling in a closing direction it is under the control of the thrust limit switch mechanism; and when the valve reaches the seat, the thrust limit switch mechanism is actuated to shut off the supply of power to the motor and by virtue of large thrust rings, the motor inertia is absorbed, thus preventing jamming of the valve. The defendant does not use a slip clutch nor does it use a two-way torque responsive control.

Each of the claims numbered 22, 23, 24, 27, 28, 31, 32, 33, 42, 44, and 45 contains the following clause: " * * * means for automatically controlling the closing and opening movements of the valve by said motor and valve actuating mechanism and for automatically determining the extents of movements of the valve in both closing and opening direction * * *." Claim 22 is typical of the claims just mentioned.[1]

The District Court was of the opinion that defendant's devices could not be held to infringe any of the claims just mentioned because neither of such devices uses a slip-clutch or a two-way torque responsive control.

It is indeed difficult to understand how the District Court could have arrived at any other conclusion with respect to the "common clause" claims, and such conclusion is abundantly supported by statements in the specification to which the District Court in its opinion called attention. In response to plaintiffs' contention that the specifications merely set forth the patentee's preferred embodiment, the District Court aptly replied: "While Chandler speaks of the 'preferred embodiment,' it is in reality his only embodiment. While Chandler shows two forms of his invention, he employs the same slip clutch in each of them. Chandler gave no indication that satisfactory results could be obtained without the use of the slip clutch, or that his torque limit control could be used in one direction only * * *. His teaching showed only a torque responsive limit switch actuating mechanism in both directions. * * * The identity of the operation in both directions is emphasized by the reversibility features employed."

All of the claims in issue, which are copied from Panish, except 39 and 41, contain the "common clause" and that clause was inserted in the claims now containing it, as shown by the file wrapper history of the Panish patent, in order to have them allowed over the United States patent to Harvey, No. 1,479,178.

Appellants concede that Chandler did not disclose anything new in the art, except the employment of his weak link in both closing and opening the valve. It is also conceded that the accused devices both use a weak link in closing the valves, but not in opening them. The trial court was of the opinion that the dominant and controlling novelty of the patent consisted in this difference, and that none of the claims relied upon which contained the "common clause" was infringed by either accused device, because neither uses a slip clutch or a two-way torque responsive control. With that conclusion we agree and we think it is supported by the file wrapper of the Panish patent as well as the prior art, which the accused devices seem to follow more closely than they do the teachings of Chandler. It is quite true that much of the prior art relied upon discloses devices other than valves, but Chandler widened the scope of applicable analogies and his field of operations, by relating his patent not only to the operation of valves but to all similar mechanisms. We are convinced that a broader construction of these "common clause" claims would invalidate them.

[1] "22. In a valve opening and closing device having valve actuating mechanism and a driving motor therefor; means for automatically controlling the closing and opening movements of the valve by said motor and valve actuating mechanism and for automatically determining the extents of movements of the valve in both closing and opening directions, said means including means actuated by the movement of the motor after the valve is closed for rendering the motor temporarily inoperative to apply power to the valve actuating mechanism."

Appellants urge that where the claims use the words "in both closing and opening directions," they refer broadly to any automatic control and any automatic determination of the extensive movements of the valve in both directions, and not to a mechanical torque limit switch,—a single mechanical torque limit switch being subsequently specified as included as a part only of the automatic apparatus theretofore described in more general language. We cannot agree with this contention because we think that such interpretation would directly conflict with much of the prior art. The District Court was of the same opinion and is strongly supported in that conclusion by the statement of Panish, as shown in the file wrapper of his patent, when in distinguishing from the Harvey patent he said: "It is this inability of Harvey's structure to operate automatically in both closing and opening directions that keeps the Harvey structure out of the valve control art." Appellants urge that this language was used by Panish in an effort to distinguish from Harvey on the ground that Panish disclosed every kind of automatic operation in both closing and opening directions. We cannot agree with that interpretation of Panish's language.

Appellants further contend that the only limitations in respect to the mechanical torque limit control are to be found in the language which follows the common clause, "means actuated by the movement of the motor after the valve is closed for rendering the motor temporarily inoperative to apply power to the valve-actuating mechanism." Appellants insist that this description of a mechanical torque limit control was broad enough before the amendment to describe the mechanical torque limit control in the closing direction only. We are unable to reconcile such interpretation of the claims with the statement of Panish which we have quoted above.

With respect to claims 11, 21, 39, and 42, we feel that it is unnecessary to add to the District Court's opinion. We agree with those conclusions in every respect.

The failure of the District Court to discuss claim 41 in detail was due to an oversight which was not called to its attention until the opinion was published. The ruling was that it was not infringed, and the court notified counsel that it was content to stand upon the ruling without further discussion. This claim did not contain the "common clause." It was claim 22 of Amendment A of the Panish file wrapper, and finally became claim 21 of the Panish patent. In submitting it Panish said: "New claim 22 is like claim 12, but it brings out in addition the fact that the control means is manually initiated to be automatically maintained operative. None of the other claims in the case bring out this feature and it appears to be new with applicant in a device of the kind specified in the claim. Allowance of the claim in view of the remarks given in connection with claim 12 is asked."

The Panish claims 18 and 22, and other claims, were rejected on Harvey. All of those claims thus rejected, except 18 and 22, were amended by adding the "common clause." Subsequently, claim 18 of this group was amended to call for the feature of repeat operation in the same direction. Claim 22 of this group was never amended, nor was any argument made thereafter as to its patentability. Claim 12, which Panish said was like claim 22, was not allowed until it was amended to specify torque operation in both directions, and also Panish's torque by-pass switch. Whether claim 22 of amendment A of the Panish file wrapper was afterwards allowed through oversight of the Examiner, we do not know. However, it must be conceded that claim 41 of the Chandler patent, with one exception, is like claim 12 (now claim 21) of the Panish patent, which was not allowed until it was amended as stated above. Hence, claim 41 bears the unenviable record of having been rejected on Harvey, and, without amendment or subsequent argument as to patentability, it appears now as an allowed claim, while another claim of the same tenor and effect was rejected and never allowed until amended to provide for two-way torque control.

■ Under these circumstances appellee urges us to construe claim 41 as calling for a two-way mechanical torque operation. This would be to insert something in the claim which clearly is not there. We prefer to hold that claim 41 is invalid because anticipated by Harvey. That was the ruling made by the Examiner when considering the Panish patent, and we think that ruling is sound.

We affirm the decision of the District Court in all respects except as to the validity of claim 41. That claim we hold was anticipated by Harvey and for that reason is invalid.